UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re<br><br>KENNEWICK PUBLIC HOSPITAL DISTRICT, d/b/a/ Trios Health,<br><br>Debtor. | Case No. 17-02025-FPC9<br><br>**NOT FOR PUBLICATION**<br><br>**CONCLUSIONS OF LAW AND FINDINGS OF FACT RE APPLICATION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM FOR FEES AND EXPENSES OFARENT FOX LLP** |

THIS MATTER came before the Court on the Application for Allowance of Administrative Expense Claim for Fees and Expenses of Arent Fox LLP as Counsel to the Official Committee of Unsecured Creditors (ECF No. 962) and supporting documents, the Supplement and Amendment to Application of Allowance of Administrative Expense Claim for Fees and Expenses of Arent Fox LLP as Counsel to the Official Committee of Unsecured Creditors (ECF No. 1032) and supporting documents, and the Supplemental Statement in Further Support of Application (ECF No. 1069).

The Court reviewed the pleadings and records herein, including Response of Bank of America, N.A., to Committee Professionals' Fee Applications (ECF No. 1053), The University of Puget Sound's Joinder Re Response of Bank of America,

N.A., to Committee Professionals' Fee Applications (ECF No. 1056), and Omnibus Reply of Arent Fox LLP as Counsel to the Official Committee of Unsecured Creditors to Responses of Bank of America, N.A. and the University of Puget Sound to Committee Professionals' Fee Applications (ECF No. 1059). The court also heard argument of the parties, and was fully advised in the premises, and makes the following findings of fact and conclusions of law.[1]

## **CONCLUSIONS OF LAW**

1. The bankruptcy court must ensure that attorneys seeking employment do not have interests adverse to those of the estate, only charge for services that benefit the estate, and only charge reasonable fees. *In re Park-Helena Corp.*, 63 F.3d 877, 880-82 (9th Cir. 1995).

2. To facilitate these responsibilities, Federal Rule of Bankruptcy Procedure 2014(a) imposes an independent disclosure requirement on attorneys: an application for order of employment shall disclose "all of the [applicant's] connections with the debtor, creditors, [or] any other party in interest."

3. Failure to comply with the disclosure rules—whether willful, negligent, or inadvertent—is a sanctionable violation, even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Rule. *Park-Helena Corp.*, 63 F.3d at 880-82.

4. If a Rule 2014 violation occurs, the bankruptcy court has considerable discretion in determining whether to allow all, part, or none of the fees and expenses of a properly employed professional. *In re Film Ventures Int'l, Inc.*, 75

---

[1] The Court departs from the customary placement of findings of fact before conclusions of law because in this case, presenting the legal framework at the outset enables the reader to readily understand the relevance and importance of each factual finding.

B.R. 250, 253 (9th Cir. BAP 1987); *In re Lewis*, 113 F.3d 1040, 1045-46 (9th Cir. 1997).

5. Generally, the Bankruptcy Code authorizes the bankruptcy court to award to a professional "reasonable compensation for actual, necessary services." 11 U.S.C. § 330(a)(1).

6. In this case, the attorneys for the committee of unsecured creditors (the "Committee") requested an award of attorney fees and expenses under 11 U.S.C. § 330(a). A difference of opinion exists among courts as to whether § 330 was incorporated into Chapter 9.[2] However, no party challenged the assertion that this Court is authorized to approve fees and expenses under § 330. Accordingly, the Court will proceed to apply the principles of § 330 which are consistent with the principles established by the Ninth Circuit and other circuit courts of appeals.

7. In determining an award of compensation, the bankruptcy court considers the nature, the extent, and the value of the professional's services, taking into account factors such as "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case ... [and] whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed...." 11 U.S.C. § 330(a)(3).

---

[2] The tension arises because § 901 sets forth specific code sections which apply in Chapter 9; section 330 is not listed. In addressing the application of § 330, some courts have reasoned that because § 330 is referenced in sections which *are* listed in § 901, § 330 applies in Chapter 9 proceedings. *See In re Castle Pines North Metropolitan Dist.*, 129 B.R. 233, 234-35 (Bankr. D. Colo. 1991). Other courts have reasoned that since § 330 was not specifically listed, it does not apply. *See In re County of Orange*, 241 B.R. 212, 216 (Bankr. C.D. Cal. 1999); *In re East Shoshone Hosp. Dist.*, 226 B.R. 430, 431 (Bankr. D. Idaho 1998).

CONCLUSIONS OF LAW AND FINDINGS OF FACT - 3

8.  The bankruptcy court has the authority to "award compensation that is less than the amount of compensation that is requested." 11 U.S.C. § 330(a)(2).

9.  In the Ninth Circuit, the courts primarily use the lodestar method to calculate reasonable attorney fees. *In Re Eliapo*, 468 F.3d 592, 598 (9th Cir. 2006). A court computes the lodestar rate by multiplying the number of hours expended by the hourly rate.

10. The bankruptcy court cannot award compensation for services that were not reasonably likely to benefit the estate or were not necessary to the administration of the estate. 11 U.S.C. § 330(a)(4)(A)(ii).

11. The bankruptcy court has a duty to review fee applications notwithstanding the absence of objections by the trustee, debtor, or creditors. *In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 841 (3d Cir. 1994).

12. Costs of Administration claims, which include the fees approved for the attorneys employed by the Committee, have priority over the claims of general unsecured creditors. 11 U.S.C. § 507(a)(2).

13. Attorneys' compensation must be reasonable, for actual necessary services rendered, based on the time, the nature, the extent, and the value of the services rendered, and on the cost of comparable services other than in a case under the bankruptcy code. 11 U.S.C. § 330(a)(3)(A)-(F).

14. Generally, the first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time. *Blum v. Stenson,* 465 U.S. 886, 895-96, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

15. Barring special circumstances, courts may limit attorney fees to the local, prevailing rates. For example, in *Southern Industrial Banking Corporation*,

17-02025-FPC9    Doc 1072    Filed 10/19/18    Entered 10/19/18 16:11:45    Pg 4 of 15

41 B.R. 606, 612–13 (Bankr. E.D. Tenn. 1984), the court held:

> [W]hen determining a reasonable fee the court must consider "local sensibilities and the economics of the local bar" as well as the "economics of out-of-state counsel and the customary fee in other jurisdictions." In a complex case compensation based on a professional's customary billing rate, though exceeding the prevailing local rate, may be justified due to the professional's expertise. However, if a local professional with the required expertise could have been retained, a professional from another jurisdiction may be "reasonably compensated" even though the allowed fee is based on a rate lower than his customary charge.

*In re Woldoff's Inc.,* 132 B.R. 329, 333 (Bankr. S.D. Miss. 1991)(citations omitted) (citing *In re Southern Industrial Banking Corp.*, 41 B.R. 606, 612–613 (Bankr. E.D. Tenn. 1984)); see also *Rocky Mountain Helicopters, Inc.*, 186 B.R. 270 (Bankr. D. Utah 1995).[3]

## **FINDINGS OF FACT**

1. This case was commenced by the filing of a voluntary petition in this Court on June 30, 2017. (ECF No. 1)

2. An order for relief was entered on August 9, 2017. (ECF No. 143)

3. On September 1, 2017, the United States Trustee appointed the Committee. (ECF No. 178)

---

[3] In *Rocky Mountain*, the Utah bankruptcy court awarded reduced fees and costs to the New York-based Whitman law firm. In finding the fee request unreasonable, the court stated in part, "attorneys who bill at higher rates do so because they work smarter, better, and faster. Whitman's hourly rates justify the reasonable expectation that Whitman attorneys will accomplish their tasks smarter, better, and faster than attorneys who charge a lower hourly rate." 186 B.R. at 273. However, the "sheer number of hours" billed convinced the court that the Whitman firm was "not consistently accomplishing its tasks smarter, better or faster." *Id.*

4. On September 12, 2017, the Debtor issued a press release identifying RCCH HealthCare Partners ("RCCH") as a likely purchaser. (ECF No. 1054, Ex. A)

5. On October 19, 2017, the Committee moved to conduct discovery pursuant to Rule 2004, asking for an order requiring the Debtor to respond to specific requests including a request for "[a]ll documents and communications among the Debtor and RCCH HealthCare Partners concerning the negotiation of any sale transaction." (ECF No. 376-2 at 10)

6. On November 10, 2017, the Committee filed an application for the employment of Arent Fox LLP as its attorneys ("Employment Application"). (ECF No. 460) At the same time, and because Arent Fox does not have any offices in Washington, the Committee also filed an application for the employment of Bush Kornfeld LLP as its local counsel (ECF No. 458). Also on November 10, 2017, the Committee filed an application for Alvarez & Marsal Healthcare Industry Group LLC to serve it as a financial advisor. (ECF No. 461)

7. In the Employment Application, Arent Fox asserted that its attorneys have "considerable expertise in the fields of bankruptcy, insolvency, reorganizations, liquidations, debtors' and creditors' rights, debt restructuring, public debt, commercial and bankruptcy litigation, and corporate trust, and it has a strong and well-respected national practice representing creditors' committees throughout the United States." (ECF No. 460 at 3) The Application also stated Arent Fox has represented creditors and other parties in interest in Chapter 9 cases. (ECF No. 460 at 4)

8. The Employment Application included a declaration from Arent Fox partner George Angelich. (ECF No. 460-1) Mr. Angelich stated all Arent Fox attorneys who would work on the cases 'have read and are fully familiar with the

CONCLUSIONS OF LAW AND FINDINGS OF FACT - 6

Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of this Court…." (ECF No. 460-1 at 3)

9. Mr. Angelich explained Arent Fox's conflict check system, stating Arent Fox ran the names of parties-in-interest obtained from the Debtor through its computerized conflict database system. (ECF No. 460-1 at 3-4) That list did not include RCCH. (ECF No. 506 Ex. 1) While Arent Fox disclosed its relationship with one party-in-interest, Special Situations Investing Group II, LLC (ECF No. 460-1 at 6), it did not file the rest of its disclosures until November 21, 2017. (ECF No. 506)

10. Mr. Angelich indicated Arent Fox had agreed to charge "at what is known as its 'Guideline Rates.' These hourly rates represent a discount of approximately 10% from the Firm's regular 'National Rates.'" (ECF No. 460-1 at 7) The hourly rates listed are $600-$1025 for partners; $505-970 for of counsel; $340-$620 for associates; and $170-$345 for paraprofessionals. (ECF No. 460-1 at 3)

11. On December 6, 2017, the Court held a hearing on the Committee's applications to approve the employment of professionals. Two Arent Fox attorneys, Mark Angelov and George Angelich, appeared in court. At that hearing, the Court expressed concern about the cost of hiring attorneys with offices in New York and Washington, D.C.

12. In addressing the Employment Application, the Court read aloud the Oregon Local Bankruptcy Rule 2016-(1)(b)(4):

> If competent local counsel (i.e., an attorney where court hearings will regularly be scheduled in the case or adversary proceeding) is available, the court will allow compensation and expenses to nonlocal counsel in an amount not to exceed the total that would have been charged by competent local counsel. If an attorney wants a court determination

CONCLUSIONS OF LAW AND FINDINGS OF FACT - 7

before undertaking employment that competent local counsel is not available, the court will consider and rule on an application before employment is actually undertaken.

(ECF No. 566 at 1:45:16)

13. The Court expressed concern about Arent Fox's high hourly rates. Specifically, the Court noted attorneys' hourly rates in the Tri-Cities[4] (the location of the Debtor) are lower than attorneys' hourly rates in Spokane (the location of the Court); Spokane rates are lower than Seattle rates (where the offices of Bush Kornfeld are located); and Seattle rates are lower than New York rates. (ECF No. 566 at 1:46:20)

14. The Court explained the briefing drafted by Arent Fox related to the Washington State-based property issue involving the University of Puget Sound ("UPS Litigation") was not unique to this case and much of that work could have been performed by attorneys at Bush Kornfeld or other Washington attorneys. (ECF No. 566 at 1:52)

15. The Court also cautioned Arent Fox counsel to be mindful to "use the lower rate and if that happens to be someone at Bush Kornfeld, you've got to do it. If in one month you find something that is very interesting and you've got the time and you're willing to do it at Washington rates, that's okay by me…. I am just pointing out the risks of going to a different district … employment is one thing, approving fees is another." (ECF No. 566 at 1:52:47; 1:54:20)

16. After the hearing, the Court entered an order approving the employment of Arent Fox as the attorneys for the Committee, effective September 18, 2017, and reserving the amount, priority, and source of compensation for the

---

[4] In Washington, the Tri-Cities include three neighboring cities: Richland, Pasco, and Kennewick.

CONCLUSIONS OF LAW AND FINDINGS OF FACT - 8

Court to determine at a later date. (ECF No. 572)

17. The order authorizing employment reflects that the Court informed Arent Fox that it intended to adopt a policy in this case similar to the Oregon Local Bankruptcy Rule 2016-(1)(b)(4) and set forth the rule in a footnote. (ECF No. 572)

18. On January 12, 2018, Arent Fox filed a supplemental declaration disclosing it "ha[s] in the past represented, currently represent, and may in the future represent [RCCH] and its affiliates in matters unrelated to the chapter 9 proceeding." (ECF No. 651 at 3) No party objected to Arent Fox's continued employment after the disclosure.

19. On June 18, 2018, the Committee attorneys filed an application for allowance of an administrative expense claim to Arent Fox for fees of $1,803,424.50 and expenses $5,723.15 ("Fee Application"). (ECF No. 962)[5] On August 31, 2018, the Committee attorneys filed a supplement and amendment to its Fee Application requesting an additional $60,861.00 in fees and $1,551.18 in costs. (ECF No. 1032) In total, Arent Fox requests the Court approve 3,120.2 hours expended by attorneys and professional personnel in the amount of $1,864,285.50 and reimbursement of expenses in the amount of $7,274.33.

20. Two parties objected to the Fee Application, arguing (i) Arent Fox's failure to comply with Rule 2014 requires denial of fees, and (ii) Arent Fox's fees were neither reasonable nor necessary.

21. Regarding the Rule 2014 disclosures, while the list of parties in interest provided by the Debtor did not include RCCH, Arent Fox had notice of

---

[5] On June 18, 2018, the Committee attorneys also filed an applications for allowance of an administrative expense claim for fees and expenses of Bush Kornfeld (ECF No. 963) and Alvarez & Marsal Healthcare Industry Group LLC (ECF No. 964). These applications are addressed in separate, contemporaneous orders.

CONCLUSIONS OF LAW AND FINDINGS OF FACT - 9

RCCH's potential involvement in the case before it filed its Employment Application.

22.     While Arent Fox's failure to disclose may not have been willful, the inadvertent failure to check for conflicts before filing the Employment Application is concerning to the Court because disclosure is the foundation of bankruptcy proceedings. However, it is within the court's discretion to excuse Arent Fox's failure to timely discover conflicts, and to allow all, some, or none of the requested fees.

23.     Arent Fox provided the Court with a reasonable explanation for the delay in making the subsequent disclosure. Given the explanation and that no party promptly raised a concern about the subsequent disclosure, the Court finds that no harm resulted.

24.     Regarding the reasonableness of Arent Fox's requested compensation, the hourly rates charged by Arent Fox attorneys on this case range from $430 per hour to $1,065 per hour, and the rates charged by Arent Fox paralegals range from $190 per hour to $350 per hour. Eighteen Arent Fox lawyers and ten Arent Fox paraprofessionals billed time to this case.

25.     By comparison, the hourly rates charged by Seattle-based Bush Kornfeld attorneys on this case range from $340 per hour to $510 per hour, and no Bush Kornfeld paraprofessional billed time to this case.

26.     Arent Fox asserts it is entitled to its customary hourly rates in this case because the case was both nationwide in scope and was uniquely complex since it involved Chapter 9 of the bankruptcy code, and it involved issues related to "municipal finance, healthcare regulatory, transactional, corporate trust, litigation and other complex legal matters." (ECF No. 1032 at 19) However, many of the issues actually handled by Arent Fox consisted of routine legal issues that did not

CONCLUSIONS OF LAW AND FINDINGS OF FACT - 10

require specialized knowledge and experience. For example, between October 2017, and January 2018, seven Arent Fox attorneys collectively billed approximately 114 hours on the first discovery-related motion. Between January and March 2018, six Arent Fox attorneys collectively billed approximately 98 hours on the second discovery motion.

27. At no time after its employment was approved did Arent Fox follow the policy announced by the Court and ask the Court to rule on the issue of whether competent local counsel was available before requesting the authority to bill at its customary rates.

28. On June 19, 2018, the Debtor filed a Fourth Amended Plan for the Adjustment of Debts (the "Plan"). (ECF No. 976) On June 20, 2018, the Committee filed a statement in support of the Plan. (ECF No. 978)

29. On June 20, 2018, after hearing testimony and argument at a duly scheduled hearing, the Court entered an order confirming the Plan. (ECF No. 981)

30. Sections 5.5, 5.6, 5.7.3, and 5.7.6 of the Plan provide for the transfer of certain "Retained Claims and Defenses" to a Creditors Trust.

31. Pursuant to Article V of the Creditors Trust Agreement, which is attached as Exhibit 2 to the Supplement to the Plan (ECF No. 977), the Creditors Trust was created for the benefit of holders of Class 7 General Unsecured Claims.

32. Pursuant to Article V of the Creditors Trust Agreement, the allowed administrative claims for attorneys for the Committee are entitled to payment from Creditor Trust Assets as administrative creditors.

33. Pursuant to Article V of the Creditors Trust Agreement, allowed administrative claims for attorneys for the Committee shall be paid using available cash from the Creditors Trust until such time as those attorney fees are paid in full, after which time the administrator of the Creditors Trust shall make distributions to

holders of Class 7 General Unsecured Claims.

34. An attorney for the Committee asserted at the status conference held on June 28, 2018 (the "Status Conference"), the assets to be transferred to the Creditors Trust, which is the only source for payment the Class 7 General Unsecured Claims, will be insufficient to pay the Class 7 General Unsecured Claims in full. (ECF No. 1001)

35. Arent Fox attorney George Angelich, an attorney for the Committee, asserted at the Status Conference that the amount of funds to be deposited into the Creditors Trust could range from $5,900,000 to $9,300,000. (ECF No. 1001 at 9:15) Debtor's counsel disagreed with the Committee's estimate of the amount of funds related to the valuation of the UPS property and the potential for recovery. (ECF No. 1001 at 10:02)

36. Every dollar of fees or costs for professionals hired by the Committee reduces by one dollar the funds available to pay the holders of Class 7 General Unsecured Claims.

37. The total of fees and costs included in the applications by professionals hired by the Committee is $2,336,286.67. This total includes $1,871,559.83 of fees and costs requested by Arent Fox (ECF No. 1032), $283,660.27 of fees and costs requested by Bush Kornfeld (ECF No. 963), and $181,066.57 of fees and costs requested by Alvarez & Marsal Healthcare Industry Group LLC (ECF No. 964).

38. The hourly rates charged by attorneys at Arent Fox are significantly higher than rates charged by similarly qualified attorneys at Bush Kornfeld. For example, Arent Fox attorney David Dubrow received his law degree from New York University in 1986 and charges $950 per hour while Bush Kornfeld attorney Jay Kornfeld received his law degree from the University of Washington one year

CONCLUSIONS OF LAW AND FINDINGS OF FACT - 12

later in 1987 and charges $550 per hour. Arent Fox attorney George Angelich received his law degree from Duquesne in 2000 and charges $760 per hour; Bush Kornfeld attorney Katriana Samiljan received her law degree from Harvard two years earlier in 1998 and charges $400 per hour.

39. The Arent Fox attorney blended hourly rate charged to this case was $611.40.[6] (ECF No. 962-2 at 141) The attorney blended hourly rate charged by Seattle-based firms Bush Kornfeld was $412.58 (ECF No. 1053 at 12), and Foster Pepper, who represents the Debtor, was $425. (ECF No. 1060 at 1:39:05) The Arent Fox attorney blended rate is significantly higher than the Bush Kornfeld attorney blended rate.

40. Arent Fox contends it is entitled to an award of its customary hourly rate because this case was "nationwide in scope and uniquely complex." Arent Fox acknowledged the services provided by the Debtor are "local in nature" but argues the case was a national case because the parties in interest were located outside of Washington and represented by national law firms with offices outside of Washington. (ECF No. 1032 at 14) As supporting evidence, Arent Fox cites the diverse locations of the members of the Committee, the purchaser of the Debtor's assets, the hospital landlord's corporate offices, and the equipment lessors' respective corporate offices.

41. Arent Fox asserts the case was uniquely complex "because it is a

---

[6]In its Supplement and Amendment to Application, Arent Fox asserted its blended hourly rate, that included paraprofessional billing, was $597 per hour. (ECF No. 1032 at 11) However, Arent Fox filed two invoices from its timekeeping program that reflect the billing on this case. The first invoice, filed June 18, 2018 reflected a "blended rate for attorneys" of $608.62 (ECF No. 962-2 at 141), and the second invoice, filed August 31, 2018, reflected a "blended rate for attorneys" at $611.40. (ECF No. 1032-2 at 142).

CONCLUSIONS OF LAW AND FINDINGS OF FACT - 13

chapter 9 bankruptcy, and in addition, involved municipal finance, healthcare regulatory, transactional, corporate trust, litigation and other complex legal matters." (ECF No. 1032 at 19) Arent Fox cited its representation of creditors in five Chapter 9 cases as evidence of its "considerable expertise." (ECF No. 1032 at 19)

42. The Court recognizes that many of the creditors are located outside of the Tri-Cities, Washington. However, the Court does not find this factor alone is dispositive. Moreover, the most active creditors in this case were represented by attorneys located in Washington. (*See, e.g.*, ECF Nos. 151, 203)

43. In its Fee Application, Arent Fox did not identify with particularity evidence that would support the conclusion that this case was uniquely complex or include details that reveal specialty services were required. A review of the detailed timesheets submitted by Arent Fox reveals most of the time was spent on the UPS Litigation, an issue involving Washington real estate and trust law.[7] The second largest number of hours spent was on the disclosure statement and Plan and developing objections to the Plan. The time entries from this category reveal Arent Fox attorneys spent time researching Washington law related to issues including the sale of the hospital, the Washington revenue bond statute, Washington tax levies, debtor's taxing powers, general Washington statutes, and the Washington dissolution statute.

44. Much of the attorney legal services performed by Arent Fox in this case could have been performed by attorneys located in Washington who bill at

---

[7] At the hearing related to its Fee Application on September 27, 2018, Arent Fox attorney George Angelich admitted the delegation of the UPS Litigation to Bush Kornfeld "didn't happen early enough perhaps." (ECF No. 1060 at 15:44)

CONCLUSIONS OF LAW AND FINDINGS OF FACT - 14

rates similar to the rates charged by the Seattle-based Foster Pepper or Bush Kornfeld law firms.

45. In this case, the attorney services were necessary to the administration of the case and to represent the Committee. However, though involving a large number of creditors, this case was not so extremely unique and complex as to exceed the competence of Washington attorneys.

46. If the Court substituted the hourly rates of similarly qualified attorneys working at Bush Kornfeld in the place of Arent Fox hourly attorney rates, the fees would total approximately $1,099,222.00 instead of $1,864,285.50.

## CONCLUSION

After applying the conclusions of law described above, after making the findings of fact described above, and after carefully reviewing the record presented, the court finds and concludes: (i) $1,500,000 is reasonable compensation for the actual, necessary services provided by Arent Fox; and (ii) $7,274.33 of costs were reasonably incurred by Arent Fox.[8] The fee of $1,500,000 is sufficiently less than the fee requested by Arent Fox to adjust for the fact that local attorneys could have performed some of the services at rates lower than Arent Fox's Guideline Rates.

/// END OF ORDER ///

---

[8] Contemporaneously with the entry of these conclusions and findings, the court is entering an Order Awarding Administrative Expense Claim for Fees and Expenses of Arent Fox LLP.

CONCLUSIONS OF LAW AND FINDINGS OF FACT - 15